THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THOMAS R. HUDSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 19-1973 (MN) |
| | ) |
| WARDEN METZGER, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

Thomas R. Hudson, James T. Vaughn Correctional Center, Smyrna, Delaware, Pro Se Plaintiff.

May 22, 2020
Wilmington, Delaware

**NOREIKA, U.S. District Judge:**

I. **INTRODUCTION**

Plaintiff Thomas R. Hudson ("Plaintiff"), an inmate at the James T. Vaughn Correctional Center ("JTVCC") in Smyrna, Delaware, filed this action pursuant to 42 U.S.C. § 1983. (D.I. 3, 5, 6, 10).[1] He appears *pro se* and has been granted leave to proceed *in forma pauperis*. (D.I. 8, 11). Plaintiff requests counsel. (D.I. 7). The Court proceeds to screen the operative pleading (D.I. 3, 5, 6, 10) pursuant to 28 U.S.C. § 1915(e)(2)(b) and § 1915A(a).

II. **BACKGROUND**

Plaintiff injured his left knee on August 11, 2018 while playing basketball at the JTVCC. (D.I. 5 at 2, 4). Plaintiff alerted a correctional officer of the injury and was taken to the nurse's office. (*Id*. at 2). The nurse treated the knee with an ice pack and aspirin. (*Id*. at 2, 4). Plaintiff was placed on file to see a physician. (*Id*.). Following the injury, Plaintiff submitted sick call slips, grievances, and letters complaining of left knee pain. (*Id*. at 2-3). An order for an x-ray was placed on August 14, 2018, and on August 16, 2018 Plaintiff was informed that the x-rays showed "negative results" or "in normal limits." (*Id*. at 3, 5). On August 24, 2018, Plaintiff was placed in physical therapy. (*Id*. at 6).

Plaintiff submitted a grievance on August 24, 2018 complaining of his medical care, including that he was placed in physical therapy before a determination had been made regarding his condition, he had pain, and requested an MRI of the left knee to find out what was wrong with it. (D.I. 5 at 5-7; D.I. 6 at 3-6). Defendant R.N. Ephram Jeon ("Jeon") investigated the grievance, and was assigned to other medical grievances submitted by Plaintiff. (D.I. 5 at 7; D.I. 6 at 8).

---

[1] The Court will grant Plaintiff's motion to amend and considers its allegations as part of the operative pleading. (D.I. 10).

Plaintiff alleges that the grievance was denied, (D.I. 5 at 7), but the grievance indicates that it was returned as unprocessed on November 13, 2018, because Plaintiff had not submitted a sick call slip. (D.I. 6 at 8-9).

On the same day that Plaintiff submitted the grievance, he began writing to Defendant Health Services Administrator Matthew Wofford ("Wofford"). (*Id*.). On September 11, 2018, Wofford responded to Plaintiff's letter and stated that he agreed with the providers' treatment to Plaintiff, that he had read the physical therapist's encounter with Plaintiff that there was no thought of a significant injury that warranted urgent action, and that Plaintiff would benefit from resting and easing progression forward and through exercises.. (D.I. 5 at 7; D.I. 6 at 6). Plaintiff continued to write Wofford about the pain he was having and the seriousness of the injury. (*Id*. at 7-8). On September 25, 2018, Wofford responded to Plaintiff's September 18, 2018 letter, indicated that he had reviewed Plaintiff's medical records, and that he would follow-up with the therapist regarding Plaintiff's care. (D.I. 6 at 7). Plaintiff alleges that he submitted multiple sick call slips. (D.I. 5 at 8).

Plaintiff's leg gave out on him on May 9, 2019 and he could not move. (*Id*. at 3, 8). He was taken to medical and was told he would be scheduled to see a physician. (*Id*. at 8). On May 18, 2019 non-defendant Dr. Charles scheduled Plaintiff for an x-ray. (*Id.*). Plaintiff submitted a medical grievance the same day. (D.I. 6 at 11, 15-17). Jeon investigated the grievance. (*Id*. at 11). On May 29, 2019, Wofford informed Plaintiff that the x-ray, taken by a radiologist not affiliated with Connections, showed "no damage whatsoever" and was normal. (D.I. 5 at 3, 8; D.I. 6 at 10). Wofford stated that the most appropriate intervention would be complete rest, that the imaging showed no issues, and it did not warrant further intervention. (D.I. 6 at 10).

From June 2019 to July 7, 2019, Plaintiff submitted sick call slips and then a grievance. (D.I. 5 at 8; D.I. 6 at 12, 13). Jeon investigated the grievance and stated that an MRI was ordered for late July. (D.I. 6 at 14). On July 15, 2019, Plaintiff was taken to an outside clinic for an MRI. (D.I. 5 at 8). On July 21, 2019, non-defendant Dr. Wilson informed Plaintiff that he had a torn ACL, two torn menisci, and had developed a cyst. (*Id*. at 3, 8).

On August 2, 2019, Plaintiff submitted two grievances complaining that he was not receiving proper care for his left knee injury following the MRI and seeking proper treatment. (D.I. 6 at 18-23). One grievance was returned as unprocessed because there was already an open grievance on the matter (*id*. at 20), and the other was assigned to Jeon to investigate (*id.* at 21). On August 21, 2019, Wofford wrote to Plaintiff regarding the MRI results, stating that a consult had been placed for Plaintiff to see an orthopedic specialist, that the request was approved, and that Plaintiff would see the specialist by early September. (*Id.* at 24). Plaintiff underwent surgery on November 27, 2019 and is in rehabilitation. (D.I. 10).

Plaintiff alleges Defendants provided "inadequate medical care for over one year" and that "Defendants' failures created a deliberate indifference when Plaintiff's requests for care, while incarcerated, was intentionally [sic] or delayed." (D.I. 5 at 4). Plaintiff seeks compensatory damages and punitive damages. (D.I. 5 at 1, 10).

### III. <u>LEGAL STANDARDS</u>

A federal court may properly dismiss an action *sua sponte* under the screening provisions of 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b) if "the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief." *Ball v. Famiglio*, 726 F.3d 448, 452 (3d Cir. 2013); *see also* 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions); 28 U.S.C. § 1915A (actions in which prisoner seeks

redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions). The Court must accept all factual allegations in a complaint as true and take them in the light most favorable to a *pro se* plaintiff. *See Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Because Plaintiff proceeds *pro se*, his pleading is liberally construed and his Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (citations omitted).

A complaint is not automatically frivolous because it fails to state a claim. *See Dooley v. Wetzel*, 957 F.3d. 366, 2020 WL 1982194, at *4 (3d Cir. Apr. 27, 2020) (quoting *Neitzke v. Williams*, 490 U.S. 319, 331 (1989)); *see also Grayson v. Mayview State Hosp.*, 293 F.3d 103, 112 (3d Cir. 2002). "Rather, a claim is frivolous only where it depends 'on an "indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario.'" *Dooley*, 2020 WL 1982194, at *4 (quoting *Mitchell v. Horn*, 318 F.3d 523, 530 (2003) and *Neitzke*, 490 U.S. at 327-28).

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) and § 1915A(b)(1) is identical to the legal standard used when deciding motions under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Fed. R. Civ. P. 12(b)(6) standard to dismissal for failure to state a claim under § 1915(e)(2)(B)). Before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. §§ 1915 and 1915A, however, the Court must grant a plaintiff leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d at 114.

A complaint may be dismissed only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Though "detailed factual allegations" are not required, a complaint must do more than simply provide "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (internal quotation marks omitted). In addition, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *See Williams v. BASF Catalysts LLC*, 765 F.3d 306, 315 (3d Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Twombly*, 550 U.S. at 570). Finally, a plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*, 574 U.S. 10 (2014). A complaint may not be dismissed for imperfect statements of the legal theory supporting the claim asserted. *See id.* at 10.

Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps: (1) take note of the elements the plaintiff must plead to state a claim; (2) identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, assume their veracity and determine whether they plausibly give rise to an entitlement to relief. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016); *see also Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)). Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## IV. DISCUSSION

### A. Personal Involvement/Respondeat Superior

Defendant Warden Metzger ("Metzger") is described as the "lead authority" at JTVCC and is sued in his individual capacity. (D.I. 5 at 1). There are no allegations in the operative pleading directed towards Metzger and it is apparent from the description that he is named as a defendant based upon his supervisory position.

There is no respondeat superior liability under § 1983. *See Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016). A defendant in a civil rights action "cannot be held responsible for a constitutional violation which he [ ] neither participated in nor approved"; personal involvement in the alleged wrong is required. *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007); *see also Polk County v. Dodson*, 454 U.S. 312, 325, (1981) (holding that liability in a § 1983 action must be based on personal involvement, not respondeat superior). Such involvement may be "shown through allegations of personal direction or of actual knowledge and acquiescence." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005). In addition, a non-medical prison official must either actually know, or have reason to believe, that prison doctors are mistreating or not treating the prisoner to be liable for deliberate indifference. *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004).

There are no allegations directed towards Metzger. As pleaded, the complaint fails to state a facially-plausible claim against him and will be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1).

### B. Grievances

Jeon investigated the grievances Plaintiff submitted. Plaintiff describes Jeon as a "register [sic] nurse and investigator for JTVCC," and he is sued for "direct relationship in his individual capacity." (D.I. 5 at 2). The Complaint alleges, "for all of the medical grievances that was filed

6

by Plaintiff RN Ephram Jeon was assigned. Plaintiff's first grievance was denied, however, Plaintiff never gave up from asserting the same grievance issues." (*Id*. at 7). Grievances submitted by Plaintiff all reflect that they were investigated by Jeon. (*See* D.I. 6). There are no allegations that Jeon provided Plaintiff medical treatment.

The filing of prison grievances is a constitutionally protected activity. *Robinson v. Taylor*, 204 F. App'x 155, 157 (3d Cir. 2006). To the extent that Plaintiff bases his claims upon his dissatisfaction with the grievance procedure, an inadequate investigation or denial of his grievances the claims fail because Plaintiff has no freestanding claim based on the denial of his grievances. *See Hayes v. Gilmore*, 802 F. App'x 84, 87-88 (3d Cir. 2020) (citing *Burnside v. Moser*, 138 F. App'x 414, 416 (3d Cir. 2005) ("Inmates do not have a constitutionally protected right to the prison grievance process.") (citation omitted); *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) ("A state-created prison grievance procedure is simply a procedural right and does not confer any substantive right upon an inmate.")). Hence Jeon's involvement in the grievance process does not give rise to cognizable, independent claims.

Plaintiff cannot maintain a constitutional claim based upon his perception that his grievances were denied, not fully investigated, or that the grievance process is inadequate. Accordingly, the grievance claims will be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1).

### C. Medical Needs

Wofford, as the Health Service Administrator for JTVCC is "being sued for direct relationship in his individual capacity", and Connections ("Connections") is sued as the health contractor. (D.I. 5 at 2).

7

When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103-105 (1976). To state a cognizable claim, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. *Estelle*, 429 U.S. at 104; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care." *Estelle*, 429 U.S. at 104-05.

Although "[a]cts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs" constitute cruel and unusual punishment under the Constitution, *Estelle,* 429 U.S. at 106, merely negligent treatment does not give rise to a constitutional violation, *Spruill*, 372 F.3d at 235. Nor is "mere disagreement as to the proper medical treatment," sufficient to state a plausible constitutional violation. *Id.*; *see also Norris v. Frame*, 585 F.2d 1183, 1186 (3d Cir. 1978) ("Where the plaintiff has received some care, inadequacy or impropriety of the care that was given will not support an Eighth Amendment claim.") (quotation marks omitted).

The claims against Wofford do not rise to the level of a constitutional violation. The allegations and exhibits provided by Plaintiff do not speak to deliberate indifference by Wofford. To the contrary, Wofford responded to Plaintiff's concerns, reviewed his medical records and treatment provided, and followed-up with medical personal regarding Plaintiff's case. Moreover, Wofford was not the individual responsible for providing Plaintiff with medical care and, as the

8

health care administrator, relied upon medical test results and treatment recommendations of those who provided Plaintiff health care. Plaintiff's disagreement with the course of treatment provided him does not state a claim under the Eighth Amendment. Even were the allegations construed as medical negligence, they would not suffice to state a claim under the Eighth Amendment. The claims against Wofford will be dismissed as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1).

Finally, Plaintiff has named as a defendant Connections, the former Delaware Department of Correction health care provider. When a plaintiff relies upon a theory of respondeat superior to hold a corporation liable, he must allege a policy or custom that demonstrates such deliberate indifference. *Sample v. Diecks*, 885 F.2d 1099, 1110 (3d Cir. 1989); *Miller v. Correctional Med. Sys., Inc.,* 802 F. Supp. 1126, 1132 (D. Del. 1992). In order to establish that Connections is directly liable for the alleged constitutional violations, plaintiff "must provide evidence that there was a relevant [Connections] policy or custom, and that the policy caused the constitutional violation[s] [plaintiff] allege[s]." *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (because respondeat superior or vicarious liability cannot be a basis for liability under 42 U.S.C. § 1983, a corporation under contract with the state cannot be held liable for the acts of its employees and agents under those theories).

The Complaint contains no allegations directed towards Connections. And, as discussed, the Complaint does not allege any constitutional violations. Nor does it speak to any policy or custom that may have caused a constitutional violation. The claim against Connections will be dismissed.

All medical needs claims will be dismissed as frivolous and for failure to state claims pursuant 28 U.S.C. §§1915(e)(2)(B)(i) and (ii) and 1915A(b)(1). Because it is plausible that

Plaintiff may be able to articulate a claim against Defendants or name alterative Defendants, however, he will be given an opportunity to amend the medical needs claims. *See O'Dell v. United States Gov't*, 256 F. App'x 444 (3d Cir. 2007) (leave to amend is proper where the plaintiff's claims do not appear "patently meritless and beyond all hope of redemption").

### C. Request For Counsel

Plaintiff requests counsel on the grounds that he lacks the knowledge and skills of an attorney, his incarceration makes it difficult to obtain information on the location of defendants, he cannot depose any defendants, and he needs assistance with research, copying, etc. as opposed to an attorney who does not face such difficulties. (D.I. 7).

A *pro se* litigant proceeding *in forma pauperis* has no constitutional or statutory right to representation by counsel.[2] *See Brightwell v. Lehman*, 637 F.3d 187, 192 (3d Cir. 2011); *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993). Representation by counsel may be appropriate under certain circumstances, however, after a finding that a plaintiff's claim has arguable merit in fact and law. *Tabron*, 6 F.3d at 155.

After passing this threshold inquiry, the Court should consider a number of factors when assessing a request for counsel. Factors to be considered by a court in deciding whether to request a lawyer to represent an indigent plaintiff include: (1) the merits of the plaintiff's claim; (2) the plaintiff's ability to present his or her case considering his or her education, literacy, experience, and the restraints placed upon him or her by incarceration; (3) the complexity of the legal issues; (4) the degree to which factual investigation is required and the plaintiff's ability to pursue such

---

[2] *See Mallard v. United States Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296 (1989) (§ 1915(d) (now § 1915(e)(1)) does not authorize a federal court to require an unwilling attorney to represent an indigent civil litigant, the operative word in the statute being "request.").

investigation; (5) the plaintiff's capacity to retain counsel on his or her own behalf; and (6) the degree to which the case turns on credibility determinations or expert testimony. *See Montgomery v. Pinchak*, 294 F.3d 492, 498-99 (3d Cir. 2002); *Tabron*, 6 F.3d at 155-56. The list is not exhaustive, nor is any one factor determinative. *Tabron*, 6 F.3d at 157.

Several of the *Tabron* factors militate against granting Plaintiff's requests for counsel at this time. To date, Plaintiff has ably represented himself and presented his claims. As pleaded, the issues do not appear to be complex. In addition, it is not necessary for Plaintiff to locate Defendants as the Court orders service of Defendants when necessary. Finally, the case is in its early stages, there is no operative pleading, and Plaintiff will be granted leave to file an amended complaint. Accordingly, the Court finds that counsel is not necessary at this time. Therefore, the request will be denied without prejudice to renew. (D.I. 7).

**V.      CONCLUSION**

For the above reasons, the Court will: (1) deny without prejudice to renew Plaintiff's request for counsel (D.I. 7); (2) grant Plaintiff's motion to amend (D.I. 10); and (3) dismiss the operative pleading as frivolous and for failure to state claims upon which relief may be granted pursuant 28 U.S.C. § 1915(e)(2)(B)(i) and (ii) and 1915A(b)(1). Plaintiff will be given leave to file an amended complaint to amend the medical needs claims.

An appropriate Order will be entered.